UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

    -against-                           MEMORANDUM & ORDER
                                        22-CR-0494(JS)
TIMOTHY BULLEN, ET AL.,

                Defendants.
--------------------------------X

APPEARANCES

For United States:        Catherine Mary Mirabile, Esq.
                       United States Attorney's Office
                       Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201

                       Samantha Alessi, Esq.
                       Anthony Bagnoula, Esq.
                       United States Attorney's Office
                       Eastern District of New York
                       610 Federal Plaza
                       Central Islip, New York 11722

For Defendant
Ashokbhai Patel:         Sally J.M. Butler
                       42-40 Bell Boulevard, Suite 302
                       Bayside, New York 11361

SEYBERT, District Judge:

      Ashokbhai Patel (hereinafter, "Defendant Patel") moves: (1) to sever his case from the case of all other defendants (hereinafter, "Motion to Sever"); and (2) for an order granting him leave to join in applicable motions of his codefendants (hereinafter, "Joinder Request"). (See Mot., ECF No. 196.)

Defendant Patel filed his Motion to Sever on May 26, 2025. (See Mot.; Support Memo, ECF No. 196-1.) The Government filed its opposition to Defendant Patel's Motion to Sever (hereinafter, "Opposition") on June 18, 2025. (See Opp'n, ECF No. 204.)

For the reasons stated herein: Defendant Patel's Motion to Sever is DENIED; and, Defendant Patel's Joinder Request is GRANTED in part and DENIED in part.

BACKGROUND[1]

I.    Summary of the Indictment

Count one of the indictment (hereinafter, "Indictment") alleges a single conspiracy among Defendant Patel and others to engage in a sex trafficking conspiracy in or about and between 2014 and November 2022 (hereinafter, "Count One"). (See Indictment, ECF No. 1, ¶ 1.) Specifically, Count One of the Indictment alleges:

> In or about and between 2014 and the date of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants . . . MICHAEL JOHNSON, also known as "Wise," . . . ASHOKBHAI PATEL, also known as "BG" . . ., together with others, did knowingly and intentionally conspire to recruit, entice, harbor, transport, provide, obtain and and affecting interstate and foreign commerce, and to benefit, financially and by receiving

---

[1] The facts as relevant to the Court's analysis are recited and are drawn from the Case Docket, the Indictments, and the parties' relevant submissions.

2

anything of value, from participation in a
venture that engaged in such acts, knowing,
and in reckless disregard of the fact, that
(1) means of force, threats of force, fraud,
coercion and a combination of such means would
be used to cause such persons to engage in one
or more commercial sex acts, and (2) one or
more such persons had not attained the age of
18 years and would be caused to engage in one
or more commercial sex acts, which offense was
to be effected by force, fraud, coercion and
a combination such means, contrary to Title
18, United States Code, Sections 1591(a)(1)
and 1591(a)(2).

(Id. ¶ 1.)

Count two of the Indictment alleges managing a drug
premises between Defendant Patel and others in or about and between
2014 and November 2022 (hereinafter, "Count Two"). Specifically,
Count Two of the Indictment alleges:

In or about and between 2014 and the date of
this Indictment, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere, the defendants . . .
ASHOKBHAI PATEL, also known as "BG" . . .
together with others, did knowingly and
intentionally own, manage and control a place,
to wit: a motel located in Sayville, New York,
as an owner, agent, employee and occupant, and
did knowingly and intentionally rent, lease,
profit from and make available for use said
place for the purpose of unlawfully
manufacturing, storing, distributing and
using one or more controlled substances, to
wit: a substance containing cocaine base, a
Schedule II controlled substance, a substance
containing cocaine, a Schedule II controlled
substance and a substance containing heroin,
a Schedule I controlled substance.

(Id. ¶ 2.)

II.   The Government's Account of Events[2]

The Government alleges Defendant Patel took part in a sex trafficking conspiracy and other criminal activity at the Sayville Motor Lodge (hereinafter, "SML"), where he worked. (Opp'n at 3.)   It is alleged Defendant Patel conspired with his codefendants "to use the motel as a prime and protected location for criminal exploits, including forced prostitution, violence, and drug trafficking."   (See id.)

The SML was located on Sunrise Highway in Sayville, New York. (See Indictment, ¶ 4.)   It was owned by codefendants Narendarakuma Dadarwala and Shardaben Dadarwala (hereinafter, "Defendant Owners").   (See id. ¶ 2; see also Opp'n at 4.)   Their son, codefendant Jigar Dadarwala, was an SML employee (hereinafter, "Defendant Jigar") (together with Defendant Owners, the "Dadarwalas").   (See Opp'n at 4.)   So, too, was Defendant Patel.   (Id.)   Michael Johnson (hereinafter, "Defendant Johnson," and together with Defendant Patel, "Defendants") and another codefendant, Timothy Bullen (hereinafter, "Defendant Bullen"), are alleged to have operated as sex traffickers at the SML.   (Id.)

_____

[2] For the reader's convenience, the Court notes the following.  The Government includes a "Relevant Factual Background" section in its Opposition.  (See Opp'n at 3-7.)  Defendant Patel does not include any such "Facts" section in his Support Memo.  (See generally Support Memo.)  Nor does Defendant Patel dispute the Government's alleged facts as stated in its "Relevant Factual Background" section in its Opposition.   Therefore, the Court recites the Government's account of events. (See supra Section II.)

The Dadarwalas lived at the SML from the 1980s until their arrest on these charges in November 2022. (Id.)  Allegedly, Defendant Patel worked and lived at the SML from approximately 2017-2019; Defendant Bullen operated as a sex trafficker at the SML from approximately 2014-2018; and, Defendant Johnson operated as a sex trafficker at the SML from 2018-2020.  (See id.)

The Government alleges the investigation revealed the owners and certain employees of the SML, including Defendant Patel, were aware of the above criminal activity and actively conspired to perpetrate it.  (Id.)  The Dadarwalas and Defendant Patel allegedly: controlled and established prices for room rentals; knew women engaged in prostitution, including at least one minor victim, who were residing at the SML and who were receiving dates for commercial sex; communicated with johns and set up commercial sex dates; warned sex traffickers and women engaging in prostitution on the premises when law enforcement was present at the SML; observed sex traffickers being violent with women on the SAML premises; observed johns on the SML premises; and, permitted drug deals to occur on the SML premises. (See id. at 4-5.)  Further, it is alleged the sex traffickers, women engaged in prostitution, and drug dealers at the SML frequently interacted with the SML staff and called Defendant Narendarakuma Dadarwala "Dad" and "Pa" and called Defendant Shardaben Dadarwala "Mom" and "Ma".  (See id. at 5.)  Similarly, sex traffickers, women engaged in prostitution,

5

and drug dealers at the SML knew Defendant Patel as "BG," as "he frequently called the women 'bitches' and with his accent, it sounded like 'BG'." (See id.)

The Government contends Defendant Patel worked primarily as an SML housekeeper, but also would cover the front desk at times when the Dadarwalas were not available. (See id.) It further alleges that, during Defendant Patel's time at the SML, "numerous women were forced to engage in commercial sex work, and other guests and visitors openly sold and used illegal drugs." (See id.) Moreover, Defendant Patel was not just a passive observer of this illegal conduct, but was a "participant and facilitator." (See id.) The Government claims Defendant Patel "openly sexually harassed and physically assaulted many of the women who worked at the SML" and explains that because Defendant Patel was an employee, he had keys to every room, and often would enter without permission or warning. (See id.)

The Government further alleges several women are expected to testify Defendant Patel arranged commercial sex dates for them by either calling their rooms or sending johns directly to their rooms, in exchange for a cut of the proceeds, drugs, or sexual acts from the women. (See id.) "He made clear to the women that because the SML staff allowed them to operate, they 'owed' him." (See id.) The Government claims Defendant Patel sometimes would give certain women preferential rooms for extra money. (See

id. at 5-6.)   Furthermore, Defendant Patel allegedly engaged in conduct with a minor victim who was trafficked by Defendant Bullen at the SML, i.e., he sexually harassed her, physically groped her, and offered her money for sex.   (See id. at 6.)

The Government asserts the following regarding Jane Doe #1.   She was a sex worker, who, at first, worked independently at the SML, but later on "became controlled" by Defendant Johnson. (Id.)   He was allegedly physically abusive toward Jane Doe #1, dragging her across the parking lot and punching her in the face with a fist on more than one occasion.  (Id.)   Jane Doe #1 recalls the Defendant Owners being present for this and not intervening or contacting the police.  (Id.)   Allegedly, Jane Doe #1 asked the Dadarwalas and Defendant Patel to not allow Defendant Johnson on the grounds of the SML, but in or about 2019, Defendant Patel unlocked the door to her room and allowed Defendant Johnson to enter.   (Id.)   Thereafter, Defendant Johnson raped Jane Doe #1; even though she told the SML staff what happened, no one helped her or contacted the police.  (Id.)   After that incident, Defendant Johnson would allegedly sit in his car outside Jane Doe #1's room and loudly play music to taunt her.   (Id.)   Jane Doe #1 observed Defendant Johnson with firearms on many occasions.   (Id.)

III. Procedural History

On November 1, 2022, a grand jury sitting in the Eastern District of New York returned the Indictment charging Defendant

Patel and co-defendants in Count One with a sex trafficking conspiracy pursuant to 18 U.S.C. Section 1954(c), and in Count Two with managing a drug premises pursuant to 21 U.S.C. Section 856(a)(2). (See Indictment, ¶¶ 1-2.)  Defendant Patel was arrested on November 2, 2022 in Nebraska. (See Nov. 2, 2022 Elec. Order; see also Opp'n at 3.)  On January 4, 2023, Defendant Patel was arraigned in the Eastern District of New York.  (See ECF No. 60.) On that same date, this Court ordered the detention of Defendant Patel pending trial.  (See ECF No. 62.)

Discovery ensued.  (See, e.g., ECF Nos. 64-122.)  On April 29, 2025, both Defendant Owners pled guilty pursuant to agreements with the Government.  (See ECF Nos. 186-189 (sealed); see also Opp'n at 4 n.4.)  As of this date, both Defendant Jigar and Defendant Bullen are undergoing competency proceedings.  (See ECF No. 156 (sealed); see ECF No. 199 (sealed); see also, e.g., Feb. 12, 2025 Elec. Order; June 17, 2025 Elec. Order; July 24, 2025 Elec. Order; Opp'n at 4 n.4.)

A trial date for Defendant Patel and Defendant Johnson has been set for October 20, 2025 (see ECF No. 148; see also ECF No. 182).  Defendant Patel filed his pretrial Motion to Sever on May 26, 2025.[3]  (See Mot.; see Support Memo.)  The Government filed its Opposition on June 18, 2025.  (See Opp'n.)

---

[3] Defendant Johnson also filed an omnibus pretrial motion, including a motion to sever, less than two weeks before Defendant

IV.   The Instant Motions

Defendant Patel now moves for the Court to: (1) sever his case from the case of all other defendants; and (2) grant him leave to join in applicable motions of his codefendants. (See Mot.) In particular, Defendant Patel seeks the following:

> (1)   Sever Mr. Patel's Trial Pursuant to Federal Rule of Criminal Procedure 14 Based on Spillover Prejudice.
>
> (2)   Sever Mr. Patrel's Trial Pursuant to Federal Rule of Criminal Procedure 14 Based on Antagonistic Defenses.
>
> (3)   Sever Mr. Patel's Trial Pursuant to Federal Rule of Criminal Procedure 14 Based on Any and All Alleged Co[]defendant Statement Implicating Him.
>
> (4)   Join His Co[]defendants' Pretrial Motions to the Extent They Are Beneficial to His Defense.
>
> And for such other relief as the Court may deem just and proper.

(Id.)

## DISCUSSION

I.   Motion to Sever[4]

Defendant Patel first argues his case should be severed from that of Defendant Johnson's due to spillover prejudice because

---

Patel.   (See ECF No. 192).   This Court's ruling on Defendant Johnson's pretrial motion to sever is being addressed in a separate order.

[4] The only other codefendant Defendant Patel will be tried with is Defendant Johnson.   (See supra Section III.)

the "vast majority of the discovery concerning this case involves [Defendant] Patel's co[]defendants" and he will thus be "adversely affected." (See Support Memo at 4-6.) The Government's response is that the evidence demonstrates Defendants Patel and Johnson were intertwined, and Defendant Patel fails to identify significant disparities in the weight and type of evidence such that it would confuse a jury. (See Opp'n at 9-10.)

Next, Defendant Patel argues his case should be severed: (1) due to antagonistic defenses because he is "prepared to admit to certain acts but not to all"; (2) because that it is anticipated he and Defendant Johnson "are in contrast with his defense and plan"; and, because he will identify Defendant Johnson as a pimp running his own business in which Defendant Patel was not involved. (Support Memo at 7.) The Government's response is that Defendant Patel's proffered defense and Defendant Johnson's defense denying lack of involvement do not actually present an irreconcilable conflict, and the fact that the two of them had different roles in the charged conspiracy does not matter for present purposes. (See Opp'n at 10-12.)

Last, Defendant Patel argues his case should be severed because there is case law regarding such action when there is a codefendant's inculpating statement that may be introduced at trial, although Defendant Patel is currently unaware of any such statements. (See Support Memo at 7-9.) The Government confirms it

10

does not anticipate offering these kinds of statements at trial.
(See Opp'n at 12.)

### A. Legal Standard

The Federal Rule of Criminal Procedure regarding joinder
of defendants states, in part: "The indictment or information may
charge 2 or more defendants if they are alleged to have
participated in the same act or transaction, or in the same series
of acts or transactions, constituting an offense or offenses."
FED. R. CRIM. P. 8(b).  "[J]oinder is proper where two or more
persons' criminal acts are unified by some substantial identity of
facts or participants or arise out of a common plan or scheme."
United States v. Isen, No. 17-CR-0372, 2019 WL 6875369, at *1
(E.D.N.Y. Dec. 17, 2019) (quoting United States v. Rittweger, 524
F. 3d 171, 177 (2d Cir. 2008)). Whether joinder is proper "must be
determined on a case-by-case basis" and using "commonsense."  Id.
(quoting Rittweger, 524 F. 3d at 177-78). Additionally, "[j]oinder
is particularly appropriate where defendants have been charged
with a common conspiracy or related conspiracies.  A conspiracy
constitutes participation in 'a common plan or scheme.'"  United
States v. Guillen-Rivas, 950 F. Supp. 2d 446, 454 (E.D.N.Y. 2013)
(quoting United States v. Nicolo, 421 F. App'x 57, 64–65 (2d Cir.
2011), cert. denied sub nom., Schwab v. United States, 565 U.S.
918 (2011)).  Because of that, the "established rule" is "a non-
frivolous conspiracy charge is sufficient to support joinder of

11

defendants under [Rule] 8(b)."  Id. (quoting United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988)).  Indeed, "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense."  Id. (quoting United States v. Friedman, 854 F.2d 535, 561 (2d Cir. 1988)).

The Federal Rule of Criminal Procedure regarding relief from prejudicial joinder states, in part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  FED. R. CRIM. P. 14(a).  Nonetheless, "[t]he Supreme Court has expressed a strong preference in the federal system for joint trials of defendants who are indicted together to promote efficiency and serve the interests of justice by preventing the inequity of inconsistent verdicts."  Isen, 2019 WL 6875369, at *1 (quoting United States v. Shkreli, 260 F. Supp. 3d 247, 252–53 (E.D.N.Y. 2017)). Further, "[a] defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."  United States v. Page, 657 F.3d 126,

129 (2d Cir. 2011) (quoting United States v. Walker, 142 F.3d 103, 110 (2d Cir.1998)).

Moreover, "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Isen, 2019 WL 6875369, at *1 (quoting Shkreli, 260 F. Supp. 3d at 252-53); see also United States v. Fasasi, No. 22-CR-1922, slip op. at 3-4 (2d. Cir. Aug. 4, 2025) (summ. order). Additionally, because Rule 8(b) "authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." Id. (quoting United States v. Amato, 15 F.3d 230, 237 (2d. Cir. 1994)).

### B. Analysis

In this sex trafficking conspiracy case, the Court finds that joinder is proper and severance is not warranted.

With regard to Defendant Patel's position concerning severance due to spillover prejudice pursuant to Rule 14(a), as Defendant Patel notes himself, severance is warranted only when the evidence against a "minor" defendant is "so little or so vastly disproportionate" in comparison to the evidence admitted against other defendants. (Support Memo at 6 (quoting United States v. Capra, 501 F.2d 267, 281 (2d Cir. 1974).) However, Defendant Patel

13

has not made a specific showing that the evidence against him is "so little or so vastly disproportionate" in comparison to the evidence that may be admitted against Defendant Johnson. (See generally Support Memo at 4-6.) In fact, as the Government astutely observes, there is evidence that Defendant Patel and Defendant Johnson were intertwined, as demonstrated by the incident with Defendant Patel letting Defendant Johnson into Jane Doe #1's hotel room. (Opp'n at 10.) This Court also agrees with the Government that the jury will be able to understand that even though Defendant Patel and Defendant Johnson's participation in the charged conspiracy were through different actions, they both were integral and part of the criminal operation occurring at the SML. (See id.) Moreover, as the Second Circuit has noted, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Mahaffy, 446 F. Supp. 2d 115, 121 (E.D.N.Y. 2006) (quoting United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003)).

As to Defendant Patel's position regarding severance because of antagonistic defenses pursuant to Rule 14(a), he makes conclusory arguments that: he is "prepared to admit to certain acts but not to all"; it is anticipated he and Defendant Johnson "are in contrast with his defense and plan"; and, it is also anticipated Defendant Patel will identify Defendant Johnson as a

14

pimp running his own business in which Defendant Patel had no involvement.  (Support Memo at 7.)   However, as the Government contends, the Second Circuit has decided that for antagonistic defenses to warrant severance, "the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before [the court] will find such prejudice as denies defendants a fair trial."   (Opp'n at 10 (quoting United States v. Cardascia, 951 F.2d 474, 484 (2d Cir. 1991).)   The Court agrees with the Government; it finds Defendant Patel's above proffered trial defense does not irreconcilably conflict with Defendant Johnson's denial of his participation in the criminal activity at the SML.

And, as for Defendant Patel's arguments regarding severance due to codefendants' statements that implicate him pursuant to Rule 14(a), as Defendant Patel himself asserts (see Support Memo at 9), and the Government confirms (see Opp'n at 12), at present, Defendant Patel is "unaware of any co[]defendant statements the [G]overnment intends to offer against him at trial" because the Government "does not anticipate offering statements from [Defendant] Johnson or [Defendant] Bullen that implicate [Defendant] Patel at trial" (see id.).   The Government also represents if it "becomes aware of such statements," it will give Defendant Patel "adequate notice so that the parties may brief the issue in advance of trial."  (See id.)   Thus, the requested relief

for severance due to a codefendant's statement implicating Defendant Patel is premature.

Therefore, for the above stated reasons, and for the same reasons as stated in this Court's order on Defendant Johnson's Motion to Sever, which the Court incorporates herein by reference (see ECF No. 212 at 26-28), the Court hereby DENIES Defendant Patel's Motion to Sever, without prejudice to renew as to the issue of a codefendant's statement implicating Defendant Patel, if ever ripe.

## II.  Joinder Request

Defendant Patel also requests the Court's permission to "join" "motions seeking similar relief" and "adopt those arguments of co-counsel which are applicable to [Defendant] Patel's situation." (Support Memo at 9.)  The Government does not oppose this request in its Opposition papers.  (See generally Opp'n.)

The only other motion presently before the Court that Defendant Patel could join would be Defendant Johnson's pretrial omnibus motion (see ECF No. 192).  The Court has already denied all of Defendant Johnson's pretrial motions, except for one; it granted in part Defendant Johnson's various disclosure motions (see ECF No. 192-1 at 13-15) (hereinafter, "Disclosure Motions"). (See generally ECF No. 212.)  Thus, the Court hereby GRANTS Defendant Patel's Joinder Request as to Defendant Johnson's Disclosure Motions, and DENIES it as to the rest as moot, without

16

prejudice to renew.  Therefore, for the same reasons as stated in this Court's order on Defendant Johnson's Disclosure Motions, which the Court incorporates herein by reference (see ECF No. 212 at 28-31), the Court hereby ORDERS the Government to produce witness lists, exhibits, 3500 Material, and 404(b) Material no later than September 5, 2025, and DENIES the request as to Brady/Giglio Material.

### CONCLUSION

Accordingly, for the stated reasons, IT IS HEREBY ORDERED that Defendant Patel's Motion to Sever (ECF No. 196) is DENIED, without prejudice to renew as to a codefendant's statement that could implicate Defendant Patel.  It is further ORDERED that Defendant Patel's Joinder Request (ECF No. 196) is GRANTED in part and DENIED in part as moot, without prejudice to renew.

The Government is further ORDERED to produce witness lists, exhibits, 3500 Material, and 404(b) Material no later than September 5, 2025.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 5, 2025
       Central Islip, New York

17